hundred and sixty dollars and eighty-nine cents; and W. W. Huntingdon & Co., six hundred and fifty-eight dollars and six cents. In default thereof attachments must issue as prayed for.

[See Cases Nos. 16,982 and 16,984.]

========

## Case No. 16,984.

### In re VOGEL.

#### [5 N. B. R. 393.] 1

District Court, S. D. New York. March 7, 1871.

EXAMINATION OF BANKRUPTS.

It is no sufficient excuse for not answering a question put to the bankrupt that he has already replied to it at a former examination held at the instance of some other creditor òr the assignee.

[For prior proceedings, see Cases Nos. 16,982 and 16,983.]

On the examination of Henry Vogel, the bankrupt above named, pursuant to the order of the court made in the bankruptcy on the seventh day of January, eighteen hundred and seventy, hereto prefixed. The examining creditor appears by Foster & Thompson, Esqs., his counsel.

The bankrupt appears by Townsend, Dyett & Goldsmith, Esqs., his counsel.

The bankrupt does not attend in person. On motion of counsel for the examining creditor, the default of the bankrupt is entered. On application of counsel for the bankrupt, the proceedings on the foregoing order are adjourned to Friday, January twenty-first. eighteen hundred and seventy, at eleven o'clock a. m. The default of the bankrupt attends and submits to examination.

Friday, January twenty-first, eighteen hundred and seventy    Present, the register, the examining creditor by his counsel, and the bankrupt by his counsel. Proceedings adjourned by consent to Monday, January twenty-fourth. eighteen hundred and seventy, at twelve o'clock m.

January twenty-fourth, eighteen hundred and seventy. The bankrupt appears in person and by Mr. Dyett. The said Henry Vogel having been sworn, on being examined testified as follows: "Question.—Your name is Henry Vogel? Answer.—Yes. sir. Q.—How old are you? A.—My age is thirty-four."

Adjourned, on application of examining creditor to Tuesday, February first, eighteen hundred and seventy, at twelve o'clock noon.

Present, the register. The examining creditor appears by Mr. Thompson. Adjourned, on application of bankrupt, on account of the absence of his counsel, to Thursday February third, eighteen hundred and seventy, at twelve m.

Thursday, third February, eighteen hundred and seventy, at twelve m.

Present, the register. The bankrupt in person and by his counsel. And the examination

1 [Reprinted by permission.]

of the bankrupt is proceeded with as follows: "Q.—Where do you reside? A.—At one hundred and fifty-seven east sixty-fifth street."

Adjourned. by counsel, to Wednesday, fourteenth February, eighteen hundred and seventy, at three p. m.

Monday, twelfth February, eighteen hundred and seventy, three o'clock p. m. The further examination of the bankrupt is proceeded with as follows, by counsel for examining creditor: "Q.—In your last examination you stated your present place of residence. How long have you resided there? A.—Since the first of last May. Q.—Do you own the house, if not. who does own it? A.—I do not. Jacob Korn does. Q.—Have you a lease of that house? A. —I rent it. Yes, sir. Q.—Was the agreement to rent it to you in writing? A.—Yes, sir. Q.—When does the lease expire?" Objected to by counsel for the bankrupt. as immaterial. In the opinion of the register, the question should be answered. The bankrupt, by advice of his counsel, refuses to answer, on the ground that the question is irrelevant, because it appears that the lease was taken in May, eighteen hundred and sixty-nine, long subsequent to the date of the bankrupt's petition. "Q.— Are you a man of family? and if so, state the name of your wife, the names and ages of your children." Objected to, as the question was fully answered a year ago in one of the examinations of the witness. In the opinion of the register, the question should be answered. The bankrupt, by advice of his counsel, refuses to answer, on the ground that the question has been answered. "Q.—You have been in business on your own account, previous to the filing of your petition under the bankrupt law?" Objected to, on the same grounds as the last question. In the opinion of the register the question should be answered. The bankrupt, by advice of his counsel, declines to answer, on the ground that the question has already been answered. "Q.—Since you filed your petition in bankruptcy, have you settled with any of your creditors, or have any of the claims against you been bought up at your instance?" Objected to as irrelevant. In the opinion of the register the question ought to be answered. "A.—I have not settled with any of my creditors, nor has any of the claims been bought up at my instance. Q.—Has your brother bought any claims against you?" Objected to. In the opinion of the register, the question is relevant. The bankrupt, by advice of his counsel, refuses to answer. "Q.—Is your brother a creditor of yours. and if so. what claim does he hold against you?" Objected to as immaterial and irrelevant. The register decided that the question should be answered. The bankrupt. by advice of his counsel, declined to answer the question. and therefore, with his counsel. and by his advice, left the office of the register, the counsel for the creditor stating that he protested against the bankrupt leaving.

The undersigned. one of the registers of the district court of the United States, for the

Southern district of New York, in bankruptcy, hereby certifies, that upon the examination of Henry Vogel, the bankrupt above named, under and pursuant to the order for the examination of the said bankrupt hereto prefixed, the objections on the part of the bankrupt to questions put to the bankrupt by the counsel for the examining creditors were made; the refusals by the bankrupt to answer questions put to the bankrupt by counsel for the examining creditors took place, and the proceedings were had before the undersigned, which are above recited and set forth and in the order and manner above set forth.          Isaac Dayton, Register.
   February 27, 1871.

The undersigned submits the following reflections upon the objections taken on the examination set forth in the foregoing certificate: The twenty-sixth section of the bankrupt act [of 1867 (14 Stat. 529)] entitles any creditor to an order for the examination of the bankrupt. The fact that one creditor has examined the bankrupt is not a reason for withholding the privilege from another creditor. In re Adams [Case No. 40]; In re Gilbert [Id. 5,410]. The assignee in bankruptcy and a creditor stand upon the same footing as to their rights, under this section of the statute. The particular province of the assignee is to examine the bankrupt as to the disposition, condition and amount of his property, and the debts due to and owing by him, so as to enable him to get in the assets. A creditor examines the bankrupt, not only for the purpose of discovering property, but more especially to elicit facts upon which objections to the discharge of the bankrupt can be alleged. A creditor therefore has, it is apprehended, under this section of the statute, the right to examine the bankrupt, although the assignee may have already examined him, nor where two creditors, or the assignee and a creditor, examine the bankrupt at different times, does the statute impose any regulations or restrictions upon the party, exacting the second examination because of the previous examination of the bankrupt, omitting all account of the right, which, under reasonable regulation, the examining counsel has on cross-examination, or on an examination in the nature of a cross-examination of testing the memory and veracity of a person under examination by putting questions previously answered, this statute would become of little or no practical efficacy if every creditor, on examining a bankrupt, should be required to investigate all previous examinations of the bankrupt, and so to shape every question as not to be liable to an objection that the bankrupt has answered that question on such previous examination. Each creditor must, without reference to anything which may have been done by any other creditor, be allowed to put his question in his own way, otherwise, the creditor first examining the bankrupt monopolises, perhaps, in a very large measure, the rights by the section of the statute in terms conferred upon all the creditors of the bankrupt. The time, manner and cause of the examination are to be regulated so as to protect the bankrupt from oppression, unnecessary annoyance and mere delay. In re Gilbert [supra]. But the bankrupt is asking, under the bankrupt act, at the hands of the court, a discharge from his debts. In view of the object for which he has invoked the statute, the bankrupt is not warranted in regarding it as oppressive or unduly annoying if every one of his creditors exercises his right under the statute of investigating the condition, affairs and dealings of the bankrupt, and ascertaining whether he has brought himself within the remedial provision of this statute, and is entitled to its benefit. In the judgment of the undersigned, therefore, the bankrupt was not, because of his having answered the same questions on a previous examination, exempted from answering the questions put to him by the counsel for the examining creditor on this examination.

It should be further considered that there was not before the undersigned on this examination any evidence that as a matter of fact the bankrupt had in the course of any previous examination answered the same questions which were put to him on this examination. The court clearly would not be justified in holding that the bankrupt should be excused from answering a question put to him by a creditor, upon the mere recollection of the register, as to what had taken place on a previous examination of the bankrupt. Supposing such previous examination to be before the court, on the second examination of the bankrupt, if the position taken by the bankrupt in the present proceeding is correct, the court would be obliged as each question should be asked to peruse that examination and inform itself as to all the questions put to and answered by the bankrupt on such previous examination, and to determine points sometimes nice and doubtful, and requiring for their decision, perhaps, a scrutiny of all the disclosures made by the bankrupt in the whole course of that previous examination, as to whether the questions on the two examinations are exactly the same and particularly whether the statements made by the bankrupt have been full, frank and explicit answers to such questions. The adoption of such a practice would be liable to lead to abuses and would be virtually a denial of the rights given to all the creditors of the bankrupt by the twenty-sixth section of the statute, and an examination so conducted instead of being a privilege to the creditors, would be alike to the court and to the examining creditors a most embarrassing and tedious labor.

The conduct of the bankrupt in the present case, in withdrawing from the office of the register, as stated in the foregoing certificate, was a contempt of the court. It has been in the hope that the bankrupt would recognize the extreme impropriety of his conduct on that occasion, and again attend before the register

for examination, that the preparation of the foregoing certificate has been delayed.

Isaac Dayton, Register.

BLATCHFORD, District Judge. I concur in the views of the register and the questions must be answered.

## Case No. 16,985.

### VOGLE v. LATHROP.

[4 N. B. R. 439 (Quarto, 146); [1] 4 Brewst. 253; 3 Pittsb. R. 268; 18 Pittsb. Leg. J. 106; 2 Leg. Gaz. 390.]

Circuit Court, W. D. Pennsylvania. Nov. 14, 1870.

BANKRUPTCY — FRAUDULENT PREFERENCES — CONFESSION OF JUDGMENT—JUDGMENT NOTES.

1. When a debtor confessed a judgment within four months previous to the filing of the petition against him, being at the time insolvent, and the creditor having reason to believe him so, though there was, as a consideration, a pre-existing debt: *Held*, to be in fraud of the bankrupt act [of 1867 (14 Stat. 517)], being in the category of acts prohibited in section 35.

[Cited in Haskell v. Ingalls, Case No. 6,193. Re Lord, Id. 8,503; Hall v. Wager, Id. 5,951.]

[Cited in Mathews v. Riggs (Me.) 13 Atl. 49.]

2. The fact that the judgment was taken as a collateral for the security, aggregate of several other judgments, regular and valid, and to facilitate their collection, does not affect their validity.

3. When one constituted attorney for the collection of a debt procured from the debtor a judgment note for the amount in his own name, and entered it, knowing that the debtor was insolvent, there being a clear intent to give a preference within the meaning of the act, though the fact of insolvency was not directly known to the real creditors, such knowledge is imputable to them and the judgment is invalid.

4. But where the note and warrant of attorney on which a judgment was founded, were given within four months before proceedings in bankruptcy, being the agreed security for a loan made at the time, and it conclusively appeared that the creditor had no reasonable cause to believe the debtor to be insolvent, though he knew him to be so at the time of entering the judgment, the judgment is valid.

5. Where the debtors confided to one of their creditors the secret of their embarrassment and insolvency, for the purpose of protecting their surety, and better securing the collection of the debts by the prompt seizure of their property in execution, and the creditor in consequence of this information immediately issued execution: *Held*, to fall within the provisions of the 35th section of the bankrupt act, and that the assignee was entitled to the property, or to the value of it.

In bankruptcy.

M'KENNAN, Circuit Judge. On the 24th of February, 1868, the plaintiff was duly appointed assignee of L. C. & M. Berry, who were adjudged bankrupts by the district court for the Western district of Pennsylvania, on the petition of their creditors. He has filed his

[1] [Reprinted from 4 N. B. R. 439 (Quarto, 146), by permission.]

bill in this court, praying that the defendant may be enjoined against proceeding upon certain judgments, held by him against the bankrupts, in Luzerne county, Pennsylvania, and that the property seized upon execution issued thereon may be delivered up to him; and the case has been heard on the bill and answer. The bill alleges, that the defendant is the owner of judgments entered upon warrants of attorney, to Nos. 61, April term, 1866; 301, January term. 1867; 302, April term, 1867, and 113, 173, and 174, January term, 1868; that he has caused executions to be issued thereon, and the stock in trade, as well as certain real estate of the bankrupts, to be seized and advertised for sale; that at the time said warrants were given, the notes accompanying them did not evidence the true amount of the indebtedness of the makers: that such indebtedness, if any existed, had been fully paid to the defendant; and that when said notes were executed, the defendant knew, or believed, or had some reason to know, or believe, or expect, that the said L. C. & M. Berry were in embarrassed circumstances, and were about to become bankrupt. All these obligations affecting the integrity of the defendant's judgments, are denied by the answer; and, as the plaintiff has not contested such denial, by any replication, its truth is to be taken as admitted, and the denied allegations as entirely unsustained. These judgments are to be treated, then, as free from the vice of inadequate or dishonest consideration, and as not subject to impeachment for any of the reasons above stated. The bill further alleges, that judgments in Nos. 113, 173, and 174, January Term, 1868, "were given when they, the said L. C. & M. Berry, were insolvent, or contemplated insolvency, and that the intent was to give a preference, or to defeat or delay the operation of the bankrupt law, of which the said D. N. Lathrop had full knowledge."

The object of the bankrupt act is to prevent all preferences by insolvent debtors, and to secure an equal distribution of their property among their creditors. By the 35th section of the act, it is enacted, that a preference by an insolvent debtor, in any of the modes enumerated, within four months after the filing of a petition by or against him, to any creditor having reasonable cause to believe such debtor to be insolvent, shall be void, and property acquired by means of such preference, or the value of it, may be recovered by the assignee in bankruptcy from the person receiving it, or to be benefited by it. Under this section, it has been repeatedly adjudged, that these elements must co-exist in the transaction from which a preference results, viz.: an intention to give a preference, the insolvency of the debtor at the time, that the creditor had reasonable cause to believe that such insolvency existed, and that such preference was given in fraud of the provisions of the bankrupt act. The confession of a judgment for a pre-existing debt, when the defendant is insolvent and